IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff/Appellee*,

v.

CLEVON WEBSTER,

*Defendant/Appellant.*

On Appeal from the United States District Court
For the Southern District of Florida

INITIAL BRIEF OF APPELLANT CLEVON WEBSTER

Timothy Cone, Esq.
Counsel for Appellant
1615 New Hampshire Avenue, N.W.
4th Floor, North
Washington, DC 20009
Tel. (202) 862-4333

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT

**United States v. Clevon Webster**
**Case No. 23-11526-A**

Appellant files this 11th Cir. R. 26.1 Certificate of Interested Persons and

Corporate Disclosure Statement:

Brown, Richard O.I., AUSA

Cone, Timothy

Farjado Orshan, Ariana

Florida Department of Economic Opportunity

Gardea, Eduardo, Jr.

Hon. Judge Darrin P. Gayles

Gonzalez, Juan Antonio

Hon. Magistrate Judge Jacqueline Becerra

Hon. Magistrate Judge Melissa Damian

Hon. Alicia Otazo-Reyes

Hon. Magistrate Judge Chris M. McAliley

Hon. Magistrate Judge Edwin G. Torres

Horowitz, Philip Robert

Hyman, Mitchell Evan, AUSA

Kaufman, Jason Alan

Lapointe, Markenzy

Matzkin, Daniel, AUSA

Noto, Kenneth

Reding, Jason A., AUSA

Rubio, Lisa Tobin

Stone, Emily Rose, AUSA

T.D. Bank

Webster, Clevon

Webster, Lennoy

Weinstein, Michael David

s/ Timothy Cone
Timothy Cone

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT................................................ii

TABLE OF CITATIONS ........................................................................................iv

STATEMENT OF JURISDICTION ....................................................................viii

STATEMENT OF THE ISSUE................................................................................1

STATEMENT OF THE CASE..................................................................................2

      Course of Proceedings and Disposition in the District Court.........................2

      Statement of Facts..........................................................................................5

      Standards of Review .......................................................................................5

SUMMARY OF THE ARGUMENT ........................................................................5

ARGUMENT AND CITATIONS OF AUTHORITY ..............................................9

      1.     The filing of the Information did not toll the statute of
            limitations for the Superseding Indictment filed
            subsequently after the expiration of the statute of
            limitations........................................................................................9

            A.     Background.......................................................................10

            B.     The Information did not validly toll the
                   statute of limitations because Webster
                   was not given notice of its existence....................................13

            C.     The Information did not toll the statute of
                   limitations because its filing was not
                   enough to institute an adversarial
                   criminal proceeding............................................................14

D.    For purposes of the statute of limitations, instituting an information refers to commencing a legal proceeding..............................................17

E.    The federal statute of limitations should not interpreted to dispense with the constitutional protection of indictment by grand jury, because, historically, the two protections originated and evolved in tandem.................................................................................23

2.    The savings provisions of Section 3288 does not apply because the government did not move to dismiss the Information while grand juries were suspended.............................26

CONCLUSION......................................................................................28

CERTIFICATE OF COMPLIANCE......................................................29

CERTIFICATE OF SERVICE ..............................................................29

**TABLE OF CITATIONS**

**Cases:**

*Albrecht v. United States*, 273 U.S. 1 (1927) ........................................24

\* *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).............................19

*Branzburg v. Hayes*, 408 U.S. 665 (1972)................................................10

\* *Costello v. United States*, 350 U.S. 359 (1956) ................................................7, 15

\* *Gollust v. Mendell*, 501 U.S. 115 (1991) ...................................................8, 16, 18

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
    851 F.3d 1076 (11th Cir. 2017) .......................................................18

*Musacchio v. United States*, 577 U.S. 237 (2016) ...................................23

\* *Rothgery v. Gillespie County, Tex.*, 554 U.S. 191 (2008) ...................................15

*United States v. Bates*, 567 Fed. Appx. 821 (11th Cir. 2014)................................6

*United States v. B.G.G.*, 54 F.4th 1353 (11th Cir. 2022) ...................................9, 21

*United States v. B.G.G.*, No. 20-80063 (S.D. Fla. Jan. 11, 2021) .................9, 23-26

*United States v. Briscoe*, 2020 WL 5076053 (D. Md. Aug. 26, 2020)............. 14, 15

\* *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998) .....................4, 12-13

*United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992) ........................................13

\* *United States v. Italiano*, 894 F.2d 1280 (11th Cir. 1990) ...............................7, 13

*United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009)....................................7, 22

*United States v. Machado*, 2005 WL 2886213 (D. Mass. Nov. 3, 2005) ..............23

*United States v. Marion*, 404 U.S. 307 (1971)..................................................20, 22

*United States v. Pierre*, 120 F.3d 1153 (11th Cir. 1997) .............................................4

*United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001) .........................................14

*United States v. Rojas*, 718 F.3d 1317 (11th Cir. 2013) .............................................6

*United States v. Sachakov*, 812 F. Supp. 2d 198 (E.D.N.Y. 2011) ........................20

*\* United States v. Sanfilippo*, 572 F. Supp. 3d 1269 (S.D. Fla. 2021).... 17-18, 21-25

*United States v. Stein*, 425 F.Supp. 2d 330 (S.D. N.Y. 2006) ...............................19

*United States v. Taylor*, 487 U.S. 326 (1988) ....................................................19-20

*Wallace v. Kato*, 549 U.S. 384 (2007) ...................................................... 22

*Whiting v. Traylor*, 85 F.3d 581 (11th Cir. 1996) ................................................... 22

**Statutes and other authorities:**

* U.S. Const. Amend. V ..........................................................6, 10, 23-26

U.S. Const. Amend. VI ...............................................................20, 22

18 U.S.C. § 1029(a)(3)..................................................................1

18 U.S.C. § 1029(b)(2) ..................................................................1

18 U.S.C. § 1028A(a)(1) ...............................................................1, 5

18 U.S.C. § 3161(b) - (d)..............................................................21, 22

18 U.S.C. § 3231 ...........................................................................v

18 U.S.C. § 3282................................................................................*passim*

18 U.S.C. § 3288........................................................, 3, 4, 6, 9, 26-28

28 U.S.C. § 1291............................................................................v

28 U.S.C. § 2255(a) ....................................................................18

28 U.S.C. § 2255(e) ....................................................................18

\* Fed. R. Crim. P. 7(a)..........................................................19, 24-25

\* Fed. R. Crim. P. 7(b)........................................................7, 11, 12, 25

Fed. R. Crim. P. 11(a)(2) ..............................................................4

 1944 Advisory Committee Note to Fed. R. Crim. P. 7(a) ................24-25

Black's Law Dictionary (3d ed. 1993) ...........................................8, 16

4 William Blackstone, Commentaries on the Laws of England in Four Books
    (Philadelphia, J.B. Lippincott Co., 1893) .....................................25

Department of Justice Criminal Resource Manual, § 206:
https://www.justice.gov/archives/jm/criminal-resource-manual-206-when-informat
ion-may-be-used..........................................................................7

Abbe David Lowell, *et al.*, *Problems with Federal Courts Tolling Statutes of
Limitations*, LAW 360 (May 7, 2020),
https:/www.law360com/articles/1270318..............................................9

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States. The notice of appeal from the judgment of the district court entered on April 20, 2023, was timely filed on May 3, 2023 (DE107).

# STATEMENT OF THE ISSUE

## ISSUE I

Whether the district court erred in denying Webster's motion to dismiss the Superseding Indictment because this pleading was filed after the five-year statute of limitations expired.

# STATEMENT OF THE CASE

## Course of Proceedings and Disposition in the District Court

On May 26, 2020, the government filed an Information charging appellant Webster (with co-defendant and brother Lennoy Webster) with having committed federal offenses.  The Information charged Webster with five counts: conspiracy to commit access device fraud, in violation of 18 U.S.C. in violation of 18 U.S.C. § 1029(b)(2) (Count 1), possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 2), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 3-5).  DE1:1-4.

The latest date of a criminal act charged in the Information was June 3, 2015.  DE1:1-4.  The statute of limitations applicable to the charged offenses was five years.  18 U.S.C. § 3282.  Accordingly, the statute of limitations with respect to the offenses charged in the May 26, 2020 Information expired on June 3, 2020.  Webster was not served with the Information.

On January 21, 2021 – *i.e.*, after the expiration of the statute of limitations – the government filed a five-count Superseding Indictment ("Indictment") which charged Webster with the same offenses charged in the Information.  DE4:1:1-4.

Webster (like his co-defendant, *see* DED29; DE35; DE44) moved to dismiss the Indictment on statute of limitations grounds.  DE45.  Webster pointed out that the acts with which he was charged occurred on or before June 3, 2014, and the Superseding Indictment was filed more than five years later, on May 26, 2021.  DE45:5. Webster recognized that an Information was filed on May 26, 2020, but argued that for purposes of the statute of limitations, 18 U.S.C. § 3282, "criminal proceedings are not 'instituted' until an Indictment is filed, assuming no waiver to the same has been made in connection to a filed Information."  DE45:2.   Citing the decision of United States District Judge Donald M. Middlebrooks in *United States v. B.G.G.*, No. 20-80063 (S.D. Fla. Jan. 11, 2021) (DE19), Webster argued that the history of § 3282 supported his view that "the filing of an Information, for a non-misdemeanor offense, absent a valid waiver, is a meaningless document, which does nothing to preserve the government's rights of prosecution."   DE45:3.  Alternatively, Webster argued that the Indictment should be dismissed under Fed. R. Crim. P. 48(b), for "unnecessary delay."  DE45:3.

The government opposed Webster's motion, stating that "a once-in-a-lifetime pandemic . . . incited unprecedented emergency measures throughout the

criminal justice system [and] prevented the government from obtaining an indictment within the latter months of the limitations period." DE47:2. The government claimed that "once the government files an information – with or without a waiver of indictment – with the district court within the relevant statute of limitations period, the prosecution is timely." DE47:5. The government argued that "Section 3282 requires only that the government filed the information within five years, not that the defendant also waive Indictment by a grand jury within five years." DE47:6. The government added: "what must be commenced is not the entire criminal prosecution, but merely the information." DE47:6. The government stated: "While proceeding via indictment may be preferable in many situations, in this case the government had no choice but to proceed by way of information due to the pandemic." DE47:8. Alternatively, the government argued that even if the Information was "defective" its filing of the Indictment within two months of the reconvening of grand juries in the district preserved the validity of this Indictment under 18 U.S.C. § 3288, which provides that a new indictment can be filed, post-dismissal, within six months of the dismissal of an original indictment. DE47:12. The government also argued that the pandemic triggered "equitable tolling principles." DE47:16.

The Honorable Magistrate Judge Edwin G. Torres entered a Report and Recommendation ("R&R"), recommending denial of Webster's motion to dismiss,

for the reasons given in its earlier Report and Recommendation regarding co-defendant Lennoy Webster's similar motion. DE52:5 (incorporating earlier analysis). In its earlier Report and Recommendation, the Magistrate Judge reasoned that § 3282 merely requires that an "information" be "instituted" within the five-year statute of limitations, and the government complied with this requirement. DE35:5-6 (citing *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998)). The Magistrate Judge further reasoned that under 18 U.S.C. § 3288 the statute of limitations may be tolled for six months if an information is dismissed "for any reason." DE52:7. Thus, the Magistrate Judge reasoned, "if the Government moved to dismiss the information for any reason while the grand juries were suspended, there is no question that the superseding indictment here was timely brought." DE52:8.

Over Webster's objections (DE53), the district court adopted the Magistrate Judge's R & R. DE54.

Webster thereafter entered into a plea agreement. DE76. Webster agreed to plea guilty to Counts 1 and 5 of the Indictment, and the government agreed to dismiss Counts 2, 3 and 4. DE76:1. The parties agreed that Webster's plea was "conditional,"[1] in that he could appeal the denial of his motion to dismiss the

---

[1] *See* Fed. R. Crim. P. 11(a)(2); *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997).

4

Indictment, and that, should he prevail on this issue on appeal, he would "be allowed to withdraw his plea of guilty." DE76:1-2. At the plea colloquy, the government acknowledged the conditional nature of Webster's plea. DE122:7-8.

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSI"). The PSI calculated a total offense level of 12 and criminal history category II. PSI ¶ 91. The PSI recognized that based on his Count 5 conviction for violating 18 U.S.C. § 1028A, Webster was subject to a mandatory consecutive sentence of two years. PSI ¶ 90. Webster filed objections to the PSI. DE93. After a sentencing hearing, the district court imposed a sentence of 24 months, consisting of time served as to Count 1 and 24 months as to Count 5. DE120:18; DE106.

## Statement of Facts

During his guilty plea colloquy, Webster admitted that from September 2014 through on or about June 3rd of 2015, he and Lennoy Webster engaged in a conspiracy to use stolen personal identification information belonging to unsuspecting victims -- including their social security numbers -- in order to fraudulently apply for and receive unemployment insurance benefits issued by the Florida Department of Economic Opportunity in the name of those victims. DE122:47.

## Standard of Review

"We review *de novo* the interpretation and application of a statute of limitations." *United States v. Bates*, 567 Fed. Appx. 821, 821 (11th Cir. 2014) (unpublished) (citing *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013)).

## SUMMARY OF THE ARGUMENT

The Fifth Amendment of the Constitution requires felony charges to be submitted to a grand jury, and charged by indictment – not by "information." Having failed to convince Congress to authorize an extension of federal criminal statutes of limitations during the COVID pandemic, during which grand juries were not convened, the government devised its own work-around. Here, a felony case in which the deadline of the five-year statute of limitations loomed, the government filed an "information" within the limitations period, and then, once grand juries reconvened again, the government obtained a "superseding indictment" from a grand jury, and filed this superseding indictment after the expiration of the statute of limitations. The district court in this case approved of this work-around, adopting the reasoning of the Magistrate Judge that the statute of limitations merely requires an "information" to be "instituted" within the statute of limitations, and that the information was "valid" because it was "properly filed." This reasoning was erroneous.

First, Webster never received notice of the filing of the Information: he only

became aware of the felony charges once the Superseding Indictment was filed, after the statute of limitations had expired. This alone precludes treating the Information as a "valid" basis for tolling the statute of limitations, since "[n]otice to the defendant is the central policy underlying the statute of limitations." *United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990).

Second, even assuming an information had been served on a defendant, it can only be treated as a valid basis for prosecution if, on its face, it is "enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 409 (1956). The purpose of an information is "the initiation of adversary criminal proceedings." *United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009). Tellingly, the Department of Justice's own Criminal Resource Manual provides that the filing of an information does not *occur* until the defendant waives prosecution by indictment pursuant to Fed. R. Crim. P. 7(b).[2] Here, because Webster did not waive his right to be indicted by a grand jury, the information was not enough to proceed toward trial. The government's own conduct confirms that the information did not initiate adversary criminal proceedings: *no* adversarial proceedings occurred until *after* the superseding indictment was filed.

The Magistrate Judge interpreted the statute of limitations to merely require

---

[2] *See* Department of Justice Criminal Resource Manual, § 206: https://www.justice.gov/archives/jm/criminal-resource-manual-206-when-information-may-be-used.

that an information be "instituted." The term "instituted," it concluded, meant something different from commencing a prosecution.  But this interpretation is inconsistent with *Gollust v. Mendell*, which held that "the word 'institute' is commonly understood to mean 'inaugurate or commence, as to institute an action." 501 U.S. 115, 124 (1991) (quoting Black's Law Dictionary 985-985 (3d ed. 1993) and other dictionaries); *id* (noting that Congress repeatedly uses the word "instituted" to "mean the commencement of an action.").

Moreover, as a practical matter, from the perspective of the defendant, his family, his friends, his employer, and just about everybody else, there is no meaningful difference between the filing of an information charging felony offenses and the initiation of a criminal prosecution.  The two events have the same life-changing consequences.

A number of fundamental rights – the right to Speedy Trial, the right to counsel – are triggered by the filing of an information or an indictment.  But under the government's work-around, the filing of criminal charges engages nothing –except, conveniently for the government, the tolling of a looming limitations deadline.  Finally, the history of the enactment and revisions of the statute of limitations does not suggest that, when the crimes being charged are felony offenses, it was meant to be tolled by a waiver-less information,.

## ARGUMENT AND CITATIONS OF AUTHORITY

1.    **The filing of the Information did not toll the statute of limitations for the Superseding Indictment filed subsequently after the expiration of the statute of limitations.**

At the outset, three points bear noting.  First, last year, this Court expressly reserved the issue presented here.  *United States v. B.G.G.*, 54 F.4th 1353, 1370 & n. 3 (11th Cir. 2022) ("we do not reach the issue of whether filing an information without a waiver of indictment institutes the prosecution, and tolls the statute of limitations, under sections 3282(a) and 3288.").

Second, the identical statute of limitations issue raised in this appeal is presently pending in this Court in *United States v. Sanfilippo*, in Appeal No. 22-11175-DD.  Upon filing this brief, in the interest of judicial economy, Webster will move this Court to consolidate the present appeal with the appeal in *Sanfilippo.*

Third, as noted by the district court in *United States v. B.G.G.*, No. 20-80063 (S.D. Fla. Jan. 11, 2021) (DE19) ("*B.G.G. Order*"), "in March of 2020 when the Department of Justice asked [Congress] to suspend criminal statutes of limitations during the coronavirus pandemic and for one year thereafter, Congress declined to make such a special dispensation." *B.G.G. Order* p. 19 (citing Abbe David Lowell, *et al.*, *Problems with Federal Courts Tolling Statutes of Limitations*, LAW 360 (May 7, 2020), https:/www.law360com/articles/1270318).  Thus, in this case, the

Executive Branch in effect is asking this Court to authorize a statute of limitations work-around that it was unable to get the Legislative Branch to enact.

## A.    Background.

The facts underlying the statute of limitations issue in this case are undisputed.  An information (the "Information") was filed on May 26, 2020.   The Information charged Webster with access device felonies committed on or before June 3, 2015.  DE1:4.[3]   As the government recognizes, the five-year statute of limitations under 18 U.S.C. § 3282(a) permitted the institution of a criminal action only "until June 3, 2020."  DE47:1, 3.

The Fifth Amendment to the United States Constitution requires that felonies "shall be prosecuted by indictment, or, if indictment is waived, it may be prosecuted by information." *Branzburg v. Hayes*, 408 U.S. 665, 687 n. 24 (1972).[4] Because the offenses described in the Information were all felonies (offenses distinct from misdemeanors in that they are offenses punishable by imprisonment for more than one year), these offenses could "be prosecuted by information [only]

---

[3]   June 3, 2015 is the date on which law enforcement officers executed a search warrant at Webster's residence.  PSI ¶¶ 17-18.  June 3, 2015 is therefore the last date of Webster's alleged criminal conduct.

[4]   The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.

if the defendant – in open court and after being advised of the nature of the charge and of the defendant's rights – waives prosecution by indictment." Fed. R. Crim. P. 7(b). As the government recognizes, Webster "did not consent to a waiver of indictment."

On January 22, 2021 – approximately seven months after the expiration of the statute of limitations – the government filed a "superseding indictment" (the "Superseding Indictment") which charged Webster with the same offenses charged in the Information. DE4. Webster moved to dismiss the Superseding Indictment on statute of limitations grounds. DE45:5.[5] In response, the government noted that grand juries had been suspended in 2020 as a result of the COVID pandemic, and argued that, for purposes of § 3282(a)'s five-year statute of limitations, its May 26, 2020 Information "instituted" Webster's prosecution for the offenses described in the Information, even though Webster did not waive prosecution by indictment – *i.e.*, the Information was "waiver-less." DE47:7. The government argued that "a waiver is not required for an information to *come into being*." DE47:6 (emphasis in original). Rule 7(b), the government claimed, merely proscribes "*prosecution without waiver*." DE47:6 (emphasis added).

---

[5] As noted above, Webster's co-defendant Lennoy Webster had previously moved to dismiss the Superseding Indictment on statute of limitations grounds, DE29, and the Magistrate Judge had recommended denial of this motion, DE35, a recommendation adopted by the district court. DE44.

Citing its earlier denial of Webster's co-defendant's similar motion, the Magistrate Judge denied Webster's motion to dismiss the Superseding Indictment on statute of limitations grounds. DE52 (citing DE35). The district court adopted the Magistrate Judge's R&R in a two-page order, without additional analysis. DE54:1-2.

The Magistrate Judge noted in its R&R that the statute of limitations provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or *the information is instituted* within five years next after such offense shall have been committed." DE35:5 (emphasis added in the R&R) (quoting 18 U.S.C. § 3282(a)). The Magistrate Judge quoted the following reasoning in *United States v. Burdix-Dana*, 149 F.3d 741, 742 (7th Cir. 1998):

> While we recognize that the absence of a valid waiver of prosecution by indictment bars the acceptance of a guilty plea or a trial on the relevant charges, see Fed. R. Crim. P. 7(b), we do not believe that the absence of this waiver makes the filing of an information a nullity. Rule 7(b) does not forbid filing an information without a waiver; it simply establishes that prosecution may not proceed without a valid waiver. Rule 7(b) concerns itself with the requirements that the government must satisfy before it proceeds with a prosecution. We do not see how this rule affects the statute governing the limitation period. There is nothing in the statutory language of 18 U.S.C. § 3282 that suggests a *prosecution* must be instituted before the expiration of a five year period; instead the statute states that the *information* must be instituted. We hold that the

> filing of the information is sufficient to institute it within
> the meaning of 18 U.S.C. § 3282.

DE35:5-6 (emphases added in *Burdix-Dana*). The Magistrate Judge adopted the reasoning of *Burdix-Dana* that, for purposes of the statute of limitations, a distinction exists between whether an "information" is instituted, or whether a "prosecution" is instituted. DE35:5-6. According to the Magistrate Judge, and *Burdix-Dana*, while the statute of limitations requires that an "information must be instituted" within the five-year period, "nothing" in this language "suggests [that] a *prosecution* must be instituted before the expiration of a five year period." 149 F.3d at 742 (quoted at DE35:5) (emphasis added in *Burdix-Dana*). The Magistrate Judge cited *United States v. Cooper*, 956 F.2d 960, 962-63 (10th Cir. 1992) for the proposition that an information filed in the absence of a waiver of indictment provides "a valid basis prosecution." DE52:3. Webster disagrees with this reasoning.

### B.     The Information did not validly toll the statute of limitations because Webster was not given notice of its existence.

Contrary to the Magistrate Judge's finding, the Information was not a valid basis for tolling the statute of limitations. "Notice to the defendant is the central policy underlying the statute of limitations." *United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990). Here, the Information was not served on Webster

before the Superseding Indictment was filed.[6]  This in itself is a fatal defect here, since, without notice to the defendant, the Information could not toll the statute of limitations.  *See United States v. Ratcliff*, 245 F.3d 1246, 1253-54 (11ᵗʰ Cir. 2001) (determining that an original indictment did not toll the statute of limitations because it failed to give the defendant notice of the charges in the superseding indictment).

### C. The Information did not toll the statute of limitations because its filing was not enough to institute an adversarial criminal proceeding.

The Magistrate Judge concluded that the Superseding Indictment was "timely filed," because it related back to the Information, which was "timely filed." DE35:9.  In support of this reasoning, the Magistrate Judge cited *United States v. Briscoe*, 2020 WL 5076053 at * 2 (D. Md. Aug. 26, 2020) for the proposition that "there is no reason why a subsequent indictment cannot relate back to a preceding, *valid* information because the two forms of charging documents are treated the same for statute of limitations purposes."  DE35:9 (emphasis added).  In effect, the Magistrate Judge acknowledged that its conclusion hinged on treating the Information as "valid."

---

[6]  The government's responses to the defendants' motions to dismiss the case on statute of limitations grounds, DE31, DE47, do not claim that the Information was ever served on Webster.

But the Magistrate Judge's only basis for qualifying the Information as "valid" was the fact that this document was "properly filed" on the docket of the district court. DE35:6 (quoting *Briscoe*, 2020 WL 5076053 at * 2). But the Information was not "valid": it did not give Webster notice of the charges.

Moreover, the validity of an information is not based merely on whether the document was successfully filed on a court docket. The *purpose* of an information is to commence criminal proceedings. *See Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 198 (2008) (listing an "information" as one of the ways the government initiates "adversary judicial criminal proceedings"); *Costello v. United States*, 350 U.S. 359, 409 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits."). Whether the Information was "valid" hinges on whether this document is enough to *initiate* adversary judicial criminal proceedings – to call the case for trial on the merits of the charges it purports to be bringing.

Here, attorneys for the co-defendants did not enter an appearance until *after* the Superseding Indictment was filed on January 21, 2021, approximately seven months after the Information was filed on May 26, 2020. *See* DE4, DE6, DE7.[7]

---

[7] An attorney for the government filed an appearance in the case, but did not certify that he was serving this document on any defendant, or any defense attorney. DE2.

In the seven-month period between the filing of the Information and the filing of the Superseding Indictment, *no* adversarial activity occurred.

Moreover, Webster's initial appearance, arraignment, bond order, and order setting trial date *all* occurred *after* the Superseding Indictment was filed. DE8; DE10. The filing of the Information plainly did not initiate adversarial criminal proceedings against Webster – in other words, it did not achieve its *raison d'être*. To be clear: after the information was filed, and until the Superseding Indictment was filed, neither the government, nor the parties named in the Information, regarded the Information as having validly initiated adversarial criminal proceedings.

he Magistrate Judge interpreted the phrase "information is instituted" in § 3282(a) to mean something different from the commencement of a criminal action, *i.e.*, from *instituting* a *prosecution*. This interpretation is simply incorrect. "[T]he word 'institute' is commonly understood to mean 'inaugurate or commence, as to institute an action." *Gollust v. Mendell*, 501 U.S. 115, 124 (1991) (quoting Black's Law Dictionary 985-985 (3d ed. 1993) and other dictionaries); *id* (noting that Congress repeatedly uses the word "instituted" to "mean the commencement of an action."). In § 3282, the phrase "indictment is found or the information is

instituted" refers to the commencement of an action, *i.e.*, the institution of a prosecution.

### D. For purposes of the statute of limitations, instituting an information refers to commencing a legal proceeding.

The Magistrate Judge's position hinged on treating the filing of an information, on the one hand, and the prosecution of a case, on the other, as though, for statute of limitations purposes, the two referred to *different events*. Similarly, in *United States v. Sanfilippo*, 572 F. Supp. 3d 1269, 1275 (S.D. Fla. 2021), the district court reasoned that the verb "institute" in § 3282 "connotes the birth of something, whereas the more capacious 'prosecute' implies a continuum: from the birth of the case (when the information or indictment is instituted) through the pendency of its life (the litigation)." Based on this purported difference what the words "connote," *Sanfilippo* concluded that § 3282 merely requires that an information be "instituted" within five years, without regard to whether the case is "prosecuted" within five years. *Id.*

In effect, the Magistrate Judge and *Sanfilippo* adopted the government's ontological distinction between how a case "*come*[s] *into being*" and its "ongoing" existence. DE47:6, 14 (emphasis in original). The life of the law, however, is not ontological, but practical.

In its recent response Brief in the pending *Sanfilippo* appeal, the government noted that § 3282(a) refers to a person being "prosecuted" and to an information being "instituted," and argued that "[b]y using the terms 'prosecuted' and 'instituted' in the same sentence, Congress showed that the two verbs carry distinct meanings; 'instituted' is something less than 'prosecuted." Brief for the United States in *United States v. Sanfilippo*, No. 22-11175-DD (April 4, 2023). In support, the government cited the statement in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017), that "[w]hen Congress uses different language in similar sections," those words should be given "different meanings." But *McCarthan* involved the meaning of the word "sentence" in 28 U.S.C. § 2255(a) and the word "detention" in 28 U.S.C. § 2255(e). It is inapposite.

Congress repeatedly uses the word "instituted" to refer to "the commencement of an action." *Gollust*, 501 U.S. at 124. Thus, the phrase "information is instituted" in § 3282(a) refers to "the commencement of an action" – *i.e.*, to the event that commences prosecution. Far from having "distinct meanings," the words "prosecuted" and "instituted" refer to the same thing – the only thing, as it happens, that a statute of limitations is concerned with: the commencement of an action.

By filing the May 26, 2020 "information" as a method of charging Webster with felony offenses, the government was filing the equivalent of an indictment,

since an indictment is the document required to charge felony offenses, *see* Fed. R. Crim. P. 7(a), and the government expected that the filing of the information would toll the statute of limitations for its felony charges. As a practical matter, from the perspective of an accused person, his family, his friends, his employer, and everybody else – in other words, *objectively* – the impact of the filing of an information that alleges felony offenses is *exactly the same* as a prosecution by indictment of these offenses. Such a filing tells society: this person is charged with felony crimes. The consequences of such a filing are serious. Take for example the well-publicized case of Arthur Andersen. Even though the United States Supreme Court ultimately reversed this accounting firm's criminal conviction, *see Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), the impact of *the unsealing of the indictment* was a death sentence for the firm. *See United States v. Stein*, 425 F.Supp. 2d 330, 337 (S.D. N.Y. 2006) (noting that "the indictment of Enron's auditors, Arthur Andersen LLP . . . resulted in the collapse of the firm, well before the case was tried."); *id.* at n. 11 (citing *amici*'s observation that "no major financial services firm has ever survived a criminal indictment").

Similarly, the filing of an information or indictment also has a life-changing impact on individuals.

As the Supreme Court noted in *United States v. Taylor*, 487 U.S. 326, 340 (1988), individuals enjoy protections against prosecutorial delays because criminal

prosecutions "may disrupt [a defendant's] employment, drain his resources, curtain his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends." *Accord United States v. Sachakov*, 812 F. Supp. 2d 198, 210 (E.D.N.Y. 2011) (Weinstein, J.) ("Even in the absence of pretrial incarceration, prosecution can cause defendants to lose their business or professional licenses, impair their ability to find work or continue working, endanger their parental status, and suffer immigration consequences, as well as other personal consequences.").

In *United States v. Marion*, the Supreme Court stated:

> Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. . . . So viewed it is readily understandable that *it is either a formal indictment or information* or else the actual restraints imposed by arrest and holding to answer a criminal charge *that engage the particular protections of the speedy trial provisions of the Sixth Amendment.*

404 U.S. 307, 320 (1971) (emphasis added). As the above-italicized text of the *Marion* opinion indicates, it is the filing of a "formal indictment or information" that engages Sixth Amendment protections against undue delay in *prosecution*. The Speedy Trial Act likewise engages its statutory protections against unfair

delay in prosecution based on the date of the filing of "[a]ny information or indictment." 18 U.S.C. § 3161(b), (c) & (d).[8]

Admittedly, the government can attempt to spare the reputation of a person or business charged in an information, as it did in *B.G.G.*, by filing the information under seal, and, in addition, agreeing that the defendant "did not need to be formally arrested or even appear in court." *B.G.G.*, 53 F. 4th at 1359. But, as indicated by the government's public filing of the information in Webster's case (and in other cases), the government does not universally take the position that the sealing of an information is a prerequisite to its compliance with the statute of limitations. For host of reasons, including the implicit undue degree of prosecutorial discretion, it would be very difficult to maintain that the mere *sealing* of an information can bring a later untimely indictment within the statute of limitations.

*Sanfilippo* conceded that it is "awkward to say that an information – a kind of document – can be 'instituted.' Normally, we'd say that a document has been drafted, edited, filed, or read." 572 F. Supp. 3d at 1273. *Sanfilippo* downplayed this awkwardness by finding that "an information isn't just any old piece of paper

---

[8]  The speedy trial limits in this case were suspended under the Chief Judge's Administrative Order 2020-76. DE16:1. However, this Administrative Order did not alter 18 U.S.C. § 3282's five-year statute of limitations.

[because] its existence can be traced to a fixed moment in time – the moment in which it was filed." *Id*. But, as noted above, the "moment in time" in which a document was filed is also the moment in time upon which a prosecution is commenced. *See United States v. Knight*, 652 F.3d 1314, 1327 (11th Cir. 2009) (the right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (citation omitted)*; Whiting v. Traylor*, 85 F.3d 581, 585 n. 7 (11th Cir. 1996) ("criminal prosecutions are commenced with the filing of an information") (citation omitted), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007); *Marion*, 404 U.S. at 320 ("formal indictment or information . . . engage[s] the particular protections of the speedy trial provision of the Sixth Amendment); 18 U.S.C. § 3161(c)(1) requiring the trial to "commence within seventy days from the filing date (and making public) of the information or indictment").

In the district court, the government argued that a "waiver-less information provides the district court with *subject matter jurisdiction*," including authority to issue a warrant or summons for each defendant named in the information. DE47:6 (emphasis added).[9] The Magistrate Judge did not mention this argument in its

---

[9] In this case, no warrant or summons was issued after the Information was filed. As noted above, the case only became active after the Superseding Indictment when, for

R&R.  Webster disagrees with it.  *See United States v. Machado*, 2005 WL 2886213 at *2 (D. Mass. Nov. 3, 2005) ("a court in possession of an information but not in possession of a waiver of an indictment lacks subject matter jurisdiction over the case.").

Moreover, a violation of the statute of limitations does not necessarily implicate a district court's subject-matter jurisdiction. *Musacchio v. United States*, 577 U.S. 237, 246 (2016).  Hence, even if the filing of a waiver-less information, or of an untimely indictment, might confer subject-matter, this still would not be sufficient to bring a prosecution within the statute of limitations.

In sum, the district court erred in adopting the Magistrate Judge's view that § 3282 merely requires the filing of a timely (waiver-less) information, without regard to whether the prosecution of a defendant was instituted within the limitations period.

> **E.** **The federal statute of limitations should not interpreted to dispense with the constitutional protection of indictment by grand jury, because, historically, the two protections originated and evolved in tandem.**

In the *B.G.G. Order*, the district court analyzed at length the history of the Fifth Amendment's requirement of indictment by grand jury, and the statute of

---

example, bond was set.  DE8.

limitations. The *B.G.G. Order* noted that the right to be indicted for a felony charge by grand jury, and the limitation of prosecution by information to misdemeanors and petty offenses, was well-established in English common law. *B.G.G. Order* pp. 14-17. The *B.G.G. Order* – as the Magistrate Judge noted here – "does an admirable job of charting out the history of § 3282 from the creation of grand juries in 1635 to its 1964 amendments." DE35:7.

Rejecting the historical analysis of the *B.G.G. Order*, *Sanfilippo* boldly inferred from the "pellucid" text of the federal *statute of limitations*[10] adopted in 1790, that "at the founding" the government could bring felony cases by information, without any grand jury proceeding. 572 F. Supp. 3d at 1275-76; *id.* ("in 1790 . . . the practice of charging felonies by information was still very much alive"). This is incorrect. Prosecution by information was first authorized by Congress in 1870; prior to 1870, its use was only "sporadic." *Albrecht v. United States*, 273 U.S. 1, 7 & n. 3 (1927). The 1944 Advisory Committee Note to Fed. R. Crim. P. 7(a) (which *Sanfilippo* leaves unmentioned), states that Rule 7(a) "gives effect" to the Fifth Amendment provision requiring indictment by grand jury for any "infamous crime," and adds that "any offense punishable by imprisonment for a term of over one year is an infamous crime." The Note further

---

[10] The text of a statute of limitations is obviously not the touchstone to determine the source of the constitutional right to have charges submitted to a grand jury.

adds that petty offenses and misdemeanors "may now be prosecuted by information." *Id*. It would be highly unlikely for the Rules Committee to have misrepresented that its new rule 7(a) was doing something different than simply "giv[ing] effect" to the Fifth Amendment, *i.e.*, as *Sanfilippo* intimates, innovating by expanding, *sub silentio*, the Fifth Amendment right to indictment by grand jury to apply, now, to felony cases.

*Sanfilippo* also fails to address William Blackstone's observation that, under English common law, "informations (of every kind) are confined by the constitutional law to mere misdemeanors only." 4 William Blackstone, Commentaries on the Laws of England in Four Books 310 (Philadelphia, J.B. Lippincott Co., 1893) (quoted at *B.G.G. Order* p. 14).

As the *B.G.G. Order* noted, Federal Rule of Criminal Procedure 7(a) requires that felonies be prosecuted by indictment, while Rule 7(b) allows prosecution by information, if the defendant waives prosecution by indictment. Section 3282 uses the phrase "information is instituted." A number of federal courts have ruled that this phrase, in effect, means that an information may be invalid to prosecute, it is still valid to toll the statute of limitations. But the *B.G.G. Order* stated a more persuasive view:

> § 3282 presupposes that an instituted information can initiate a criminal prosecution. After all, an information is a charging instrument whose primary practical

purpose, aside from apprising a defendant of the charges against him, is to commence a prosecution. It would be inconsistent with the Fifth Amendment and Federal Rule of Criminal Procedure 7 to recognize an invalid charging document as a mere mechanism for extending a statute of limitations period.

*B.G.G. Order* p. 12. The *B.G.G. Order* traced the history of § 3282(a), dating back to 1790, and found nothing in this history that suggested that Congress intended for the filing of an invalid charging document to toll the statute of limitations. *B.G.G. Order* pp. 12-19.

Webster hereby adopts the reasoning of the *B.G.G. Order*, and its conclusion that an invalid information could not toll the statute of limitations.

### 2. The savings provisions of Section 3288 does not apply because the government did not move to dismiss the Information while grand juries were suspended.

The Magistrate Judge stated that "*if* the Government [had] moved to dismiss the information for any reason while the grand juries were suspended, there is no question that the superseding indictment here was timely brought." DE35:8 (emphasis added). The Magistrate Judge reasoned that the "six-month tolling exemption" of 18 U.S.C. § 3288 would have applied. DE35:8.[11] This Court need

---

[11] 18 U.S.C. § 3288 provides:

Whenever an indictment or information charging a felony *is dismissed* for any reason after the period prescribed by the applicable statute of limitations has expired, a new

not reach the validity of this *dicta*, because the government did not, in fact, move to dismiss the Information at any point in time. As the government recognized: "since the government obtained a Superseding Indictment *without* dismissal of the Information, Section 3288 did not ultimately impact the procedural postures of this case." DE31:10 (emphasis in original). Thus, § 3288 is inapplicable here, since there was no "dismissal" that might have made this statute applicable.

In the district court, the government claimed that the text of § 3288 "would have permitted the prosecution of this case even if the original Information had been dismissed beforehand." DE47:12-13. But, as the government recognizes, this argument hinges on what the nature of the dismissal would have been– on

---

indictment may be returned in the appropriate jurisdiction within six calendar months *of the date of the dismissal of the indictment or information*, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final, or if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations. *This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.*

(Emphasis added).

what the district court would have found "defective" in the Information. DE47:12. Had the district court, as in the B.G.G. Order, determined that the statutory scheme does not support "the idea that an information could be instituted to toll the statute of limitations," B.G.G. Order p. 19, and had dismissed the Information on this basis, § 3288 would not save the prosecution, since "the reason for dismissal was the failure to file the indictment or information within the period proscribed by the applicable statute of limitations." 18 U.S.C. § 3288. Alternatively, the basis for such an order could be viewed as being "some other reason that would bar a new prosecution." *Id*.

## CONCLUSION

Webster requests that this Court vacate his conviction and sentence.

Respectfully submitted,

 /s/ Timothy Cone
Timothy Cone, Esq.
Counsel for Appellant
1615 New Hampshire Avenue, N.W.
Washington, DC 20009
Telephone No. (202) 862-4333

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 6,289 words.

 /s/ Timothy Cone
Timothy Cone

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing brief was filed using CM/ECF and thereby served on this 14th day of July 2023, on  Daniel Matzkin, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132-2111.

 /s/ Timothy Cone
Timothy Cone